UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAKIA JACKSON,

                          Plaintiff,

   -v-                                              5:13-CV-68

KAREN BATTAGLIA, Individually, and
SUNY UPSTATE MEDICAL UNIVERSITY,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

LEVINE, BLIT LAW FIRM                  LEWIS G. SPICER, ESQ.
Attorneys for Plaintiff
499 South Warren Street, Suite 500B
Syracuse, NY 13202

HON. ERIC T. SCHNEIDERMAN         TIMOTHY P. MULVEY, ESQ.
Attorney General of the State of New York   Ass't Attorney General
Attorneys for Defendants
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204


DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## I. **INTRODUCTION**

      Plaintiff Lakia Jackson ("Jackson" or "plaintiff") brings this action against her former employer, defendant SUNY Upstate Medical University ("SUNY Upstate"), and her former direct supervisor, defendant Karen Battaglia ("Battaglia").

Jackson's Second Amended Complaint enumerates federal law claims for gender discrimination and a hostile work environment (First Cause of Action), race discrimination (Third Cause of Action), and retaliation (Second and Fifth Causes of Action) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); disability discrimination (Seventh Cause of Action) and retaliation (Ninth Cause of Action) in violation of the Americans with Disabilities Act ("ADA"); and claims for deprivation of her civil rights (Eleventh Cause of Action) and discrimination (Twelfth Cause of Action) in violation of 42 U.S.C. §§ 1981 and 1983.

Jackson's operative complaint also enumerates state law claims for race discrimination (Fourth Cause of Action), disability discrimination (Eighth Cause of Action), and retaliation (Sixth and Tenth Causes of Action) in violation of various provisions of the New York State Human Rights Law ("NYSHRL").

On March 14, 2014, SUNY Upstate and Battaglia (collectively "defendants") moved for a partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c) seeking dismissal of Jackson's First, Third, Fourth, Seventh, Eighth, Eleventh, and Twelfth Causes of Action against SUNY Upstate and dismissal of all but plaintiff's Sixth and Tenth Causes of Action against Battaglia. The motion was fully briefed and was considered on the basis of the submissions without oral argument.

## II. **BACKGROUND**[1]

Jackson, an African-American woman, began a one-year probationary term of employment with SUNY Upstate as a "Nurse Technician" in August 2011. Pl.'s Second Am.

---

[1] The following factual allegations are assumed true for purposes of this motion.

Compl. ¶¶ 5, 13 ("Compl."). Sometime in early April 2012, plaintiff disclosed to Battaglia, her direct supervisor at SUNY Upstate, that she had become pregnant. Id. ¶ 14.

Thereafter, on April 19, 2012, Jackson was working at SUNY Upstate when she requested an unidentified co-worker's assistance with "changing" a patient. Compl. ¶ 15. This co-worker refused to assist her and plaintiff attempted to perform the task alone. Id. ¶ 16. The strain of this activity caused plaintiff to "nearly [go] into pre-term labor" and she was rushed to the emergency room. Id. ¶ 17. Plaintiff's doctor recommended she take a temporary, two-week light duty assignment at work "in order to recover from her injury and prevent further initiation of pre-term labor or other pregnancy complications." Id. ¶¶ 17-18.

On April 27, 2012, Jackson met with Battaglia and complained about the unnamed co-worker who had refused to assist her in changing the patient. Compl. ¶ 19. Plaintiff also informed Battaglia that her doctor had recommended a two-week stint of light duty to properly recover following her emergency room visit. Id. In response, Battaglia informed plaintiff that two complaints had been made against her on April 19, 2012, the day plaintiff had requested assistance with changing the patient.[2] Id. ¶ 20. After her meeting with Battaglia, plaintiff alleges that other, unnamed "supervisors" informed her that SUNY Upstate "does not accommodate pregnant women or light duties [sic] arrangements." Id. ¶ 21.

On May 1, 2012, Jackson requested, and was granted, leave from her doctor "to return to work earlier than he had originally recommended." Compl. ¶ 22. A few weeks later, plaintiff requested assistance changing a second patient from a co-worker named Alexis,

---

[2] Jackson's pleading fails to disclose any details about these complaints. Presumably, they relate to the adequacy of her job performance. See Compl. ¶ 20 ("[Plaintiff] unequivocally denies the basis for the[se] complaints.").

who also refused to assist her. Id. ¶¶ 23-24. Plaintiff complained to another supervisor, Jamie Weeks ("Weeks"), about Alexis's refusal. Id. ¶ 25. Weeks directed plaintiff to explain her "situation" to Alexis and reiterate her request for assistance. Id. However, even after "explaining to Alexis how she had almost lost her child after performing a similar task less than four (4) weeks ago, Alexis still refused to provide assistance." Id. ¶ 26. Plaintiff returned to Weeks and complained that Alexis still refused to provide assistance. Id. ¶ 27. In response, Weeks accused plaintiff of "using her pregnancy as an excuse for not doing her work." Id. ¶ 28. Plaintiff complained to Battaglia, verbally and by e-mail, about Weeks's lack of action as well as her inflammatory accusation. Id. ¶ 29.

On May 26, 2012, Jackson requested, and was denied, a daytime shift. Compl. ¶ 30. When this shift was given to a co-worker who was not African-American, not pregnant, and who had less seniority than her, plaintiff complained to Kathy Yeldon ("Yeldon"), her union president. Id. ¶¶ 30-31. Yeldon promptly e-mailed Battaglia regarding plaintiff's complaint. Id. ¶ 31. The very next day, Battaglia met with plaintiff and formally disciplined her, in writing, for the earlier complaints that had been made against her. Id. ¶ 32.

On June 13, 2012, Battaglia informed Jackson that defendants had chosen to terminate plaintiff's employment prior to the expiration of her one-year probationary term. Compl. ¶ 33. Plaintiff alleges that, during the course of her employment with SUNY Upstate, "there were approximately four [ ] African-American nurse technicians, including herself, . . . . [that] were terminated before completing the probationary period." Id. ¶ 35. Plaintiff further alleges "it was the practice and policy of SUNY [Upstate] to terminate African-American nurse technicians prior to the completion of their probationary period of employment to prevent any advancement opportunity." Id. ¶ 34.

## III. **DISCUSSION**

Jackson's Second Amended Complaint is hardly a model pleading—it makes no attempt to distinguish whether, and to what extent, her numerous causes of action are directed at Battaglia, named "individually," or SUNY Upstate, an institutional entity. Rather, plaintiff's operative pleading elects instead to simply direct each of her twelve causes of action at "defendants." Not only does this render it virtually impossible to determine which allegations of fact are intended to support each of her particular claims for relief, it also raises a few threshold issues.

### A. **Individual Liability**

First, insofar as Jackson's Title VII and ADA claims are directed at Battaglia, plaintiff's former direct supervisor and a defendant named "individually," they cannot be maintained because individuals are not subject to liability under either Title VII or the ADA. Thomas v. N.Y.C. Dep't of Educ., 938 F. Supp. 2d 334, 354-55 (E.D.N.Y. 2013) (collecting cases). Accordingly, plaintiff's First, Second, Third, Fifth, Seventh, and Ninth Causes of Action against Battaglia will be dismissed.

### B. **Eleventh Amendment**

Second, insofar as Jackson's ADA, NYSHRL, § 1981, and § 1983 claims are directed at SUNY Upstate, plaintiff's former employer and an instrumentality of the State of New York, they are precluded by the Eleventh Amendment's guarantee of sovereign immunity.

"As a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." Allessi v. N.Y.S. Dep't of Corr. & Cmty. Supervision, 16 F. Supp. 3d 221, 225 (W.D.N.Y. 2014) (citations omitted).

"For purposes of the Eleventh Amendment, [SUNY] Upstate, a division of the State University of New York, 'is an integral part of the government of the state of [New York] and when it is sued the State is a real party.'" Richman v. Pediatric Serv. Grp., LLP, 222 F. Supp. 2d 207, 209 (N.D.N.Y. 2002) (Munson, S.J.) (alteration in original) (quoting Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990), cert. denied sub. nom., Wharton v. Dube, 501 U.S. 1211 (1991)). Consequently, "SUNY Upstate, as a state instrumentality, is entitled to immunity absent a waiver or abrogation of its Eleventh Amendment Immunity." Idlisan v. SUNY Upstate Med. Univ., No. 5:12-CV-01790, 2013 WL 495409, at *3 (N.D.N.Y. Jan. 16, 2013) (Dancks, M.J.) (footnote and citation omitted) (Report & Recommendation), adopted by 2013 WL 486279 (D'Agostino, J.) (N.D.N.Y. Feb. 7, 2013).

New York has not waived its sovereign immunity from ADA, § 1981, § 1983, or NYSHRL claims in federal court. Quadir v. N.Y.S. Dep't of Labor, –F. Supp. 2d–, 2014 WL 4086296, at *4 (S.D.N.Y. Aug. 19, 2014) (collecting cases); Trivedi v. N.Y.S. Unified Court Sys. Office of Court Admin., 818 F. Supp. 2d 712, 722 (S.D.N.Y. 2011) aff'd sub. nom., Seck v. Office of Court Admin., –F. App'x–, 2014 WL 5740757 (2d Cir. 2014)).

Nor has Congress validly abrogated state sovereign immunity from discrimination claims brought pursuant to the ADA, § 1981, or § 1983.[3] Bogle-Assegai v. Connecticut, 470 F.3d 498, 509 (2d Cir. 2006) (affirming dismissal of §§ 1981 and 1983 claims against state agency as barred by Eleventh Amendment); Quadir, 2014 WL 4086296, at *4 (dismissing ADA claims as barred by Eleventh Amendment because "Congress has never abrogated

---

[3] Jackson's disability discrimination and retaliation claims relate to her employment and are properly brought pursuant to Titles I and V of the ADA, even though SUNY Upstate is also a public entity. Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 407-08 (E.D.N.Y. 2010) (declining to construe plaintiff's ADA claims under Title II and noting that "Title I is the exclusive remedy for employment discrimination claims, even if the employer is a public entity" (footnote omitted) (collecting cases)).

- 6 -

New York's sovereign immunity from claims under Titles I and V of the ADA"); Trivedi, 818 F. Supp. at 722 (S.D.N.Y. 2011) (collecting cases noting the § 1983 bar).

However, the doctrine of Ex parte Young permits a suit to nevertheless proceed against an otherwise immune entity if a plaintiff names a state official in his or her official capacity provided the plaintiff also "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." Brown v. New York, 975 F. Supp. 2d 209, 222 (N.D.N.Y. 2013) (D'Agostino, J.) (citations omitted).

Even assuming Jackson intended to name Battaglia in her official capacity, plaintiff still fails to allege any ongoing violation of federal law. Rather, plaintiff's complaint details alleged violations of her rights at a specific time in the past when she was employed by, and eventually terminated from, SUNY Upstate. See generally Compl. And although her complaint suggests that she seeks prospective relief—specifically, an injunction precluding any "unlawful conduct alleged within this [c]omplaint at any time in the future" and a declaration that defendants "have violated" federal law—these cannot be properly characterized as "prospective," since plaintiff does not seek reinstatement or otherwise allege how such relief would remedy a future violation directed at her. Brown, 975 F. Supp. 2d at 226 (conducting same analysis and noting the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past." (citations omitted)). Because Ex parte Young is inapplicable here, plaintiff's Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Causes of Action against SUNY Upstate will be dismissed.

### C. Judgment on the Pleadings—Legal Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "The standard for granting a [Rule 12(c)] motion . . . is 'identical' to that of a 12(b)(6) motion to dismiss." Ginsburg v. City of Ithaca, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir.2001)).

"Although 'a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Robledo v. Bond No. 9, 965 F. Supp. 2d 470, 474 (S.D.N.Y. 2013) (quoting Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir.2010)). In other words, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"Determining whether a complaint states a plausible claim for relief will be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Robledo, 965 F. Supp. 2d at 474 (quoting Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce, 694 F. Supp. 2d 287, 296 (S.D.N.Y.2010)). Dismissal is appropriate only if, construing the complaint liberally and drawing all reasonable inferences in the plaintiff's favor, the factual content does not allow for a reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

Importantly, although "an employment discrimination plaintiff need not plead a prima facie case of discrimination," the pleading must still "give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)). Even so, these claims remain subject to the legal standards set forth in Twombly and Iqbal. See, e.g., Iqbal, 556 U.S. at 684 ("Though Twombly determined the sufficiency of a complaint sounding in antitrust, the decision . . . expounded the pleading standard for all civil actions, and it applies to antitrust and discrimination suits alike." (internal quotation marks and citations omitted)).

### D. **Jackson's Remaining Claims**

Jackson's Title VII claims for gender discrimination and a hostile work environment (First Cause of Action), race discrimination (Third Cause of Action), and retaliation (Second and Fifth Causes of Action) remain against SUNY Upstate. Likewise, plaintiff's NYSHRL claims for race discrimination (Fourth Cause of Action), retaliation (Sixth and Tenth Causes of Action), and a failure to accommodate (Eighth Cause of Action) as well as her 42 U.S.C. §§ 1981 and 1983 claims (Eleventh and Twelfth Causes of Action) remain against Battaglia. Defendants' present motion does not challenge any of plaintiff's retaliation claims (Second, Fifth, Sixth, and Tenth Causes of Action). Rather, defendants seek dismissal of plaintiff's various theories of discrimination.

### 1. **Race & Gender Discrimination**

Defendants move for dismissal of Jackson's Title VII claims for gender and race discrimination (First and Third Causes of Action) against SUNY Upstate. They also move for dismissal of plaintiff's NYSHRL and § 1981 discrimination claims (Fourth and Twelfth Causes of Action) against Battaglia.

"Title VII prohibits an employer from discriminating against an individual with respect to [her] 'compensation, terms, conditions, or privileges of employment' because of race and gender." Cortes v. City of New York, 700 F. Supp. 2d 474, 483 (S.D.N.Y. 2010) (quoting 42 U.S.C. § 2000e-2(a)(1)). The Pregnancy Discrimination Act ("PDA"), enacted in 1978, amended Title VII to give effect to Congress's determination that "discrimination based on a woman's pregnancy is, on its face, discrimination because of her [gender]." DeMarco v. CooperVision, Inc., 369 F. App'x 254 (2d Cir. 2010) (summary order) (quoting Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 684 (1983)).

A plausible Title VII discrimination claim based on gender or race requires a plaintiff to allege that: (1) she is a member of the protected class; (2) she is qualified for the job; (3) she suffered an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination. Hamzik v. Office for People with Dev. Disabilities, 859 F. Supp. 2d 265, 279 (N.D.N.Y. 2012) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

A plaintiff may also assert a discrimination claim against an individual under § 1981 or the NYSHRL based on roughly this same standard. Concey v. N.Y.S. Unified Court Sys., No. 08 Civ. 8858, 2011 WL 4549386, at *14 (S.D.N.Y. Sept. 30, 2011) ("Standards for Title VII claims are evaluated under the same standard as NYSHRL claims and as discrimination claims under Section[ ] 1981 . . . ." (internal footnotes omitted)).

Specifically, the NYSHRL and § 1981 provide for individual liability where the individual possessed "power to do more than carry out personnel decisions made by others," or is shown to have "actually participate[d] in the conduct giving rise to a discrimination claim." Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other

grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)); see also Ghent v. Moore, 519 F. Supp. 2d 328, 335 (W.D.N.Y. 2007) (noting § 1981's "personal involvement" requirement). The NYSHRL also provides for liability where an individual "aided and abetted" the conduct at issue by encouraging, condoning, or approving it. Zambrano-Lamhaouhi v. N.Y.C. Bd. of Educ., 866 F. Supp. 2d 147, 162-63 (E.D.N.Y. 2011) (citations omitted).

As an initial matter, it bears noting that "Title VII does not prohibit the termination of employees who are pregnant–it prohibits treating pregnant employees dissimilarly from others." Kucharski v. CORT Furniture Rental, 342 F. App'x 712, 714 (2d Cir. 2009) (summary order). Nevertheless, Jackson has sufficiently pleaded plausible theories of gender and race discrimination to survive a motion for judgment on the pleadings.

First, Jackson alleges that she is African-American and that, during the relevant time period, Battaglia and others at SUNY Upstate were on notice of her pregnancy. Compl. ¶¶ 5, 14. Second, although defendants contest her job qualifications, plaintiff's allegation that she was "qualified to hold her position of employment," and her further allegation that she "denies the basis for the complaints" presumably related to job her performance satisfies the relatively minimal burden required to establish this second element. See, e.g., Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001) ("[A]ll that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that [s]he satisfies the employer."). Third, plaintiff's termination is an indisputably adverse employment action. See, e.g., Reynoso v. All Foods, Inc., 908 F. Supp. 2d 330, 338 (E.D.N.Y. 2012) (noting that termination of employment is sufficient to satisfy this element).

Fourth, Jackson sufficiently alleges that the circumstances surrounding her termination give rise to inferences of gender and/or race discrimination, which "may be derived from a variety of circumstances, including, but not limited [to] the sequence of events leading to the plaintiff's discharge."  Herbert v. City of New York, 748 F. Supp. 2d 225, 238 (S.D.N.Y. 2010) (citations and internal quotation marks omitted).  Plaintiff alleges that her co-workers, named and unnamed, refused to assist her on a number of occasions, and when she complained about these issues to her supervisors, neither individual took any corrective action and at least one expressed outright disapproval of her pregnancy, indicating a belief that plaintiff was simply using her pregnancy to avoid her job duties.  Compl. ¶¶ 19, 25.

Jackson further alleges that after these events occurred, she was denied a daytime shift in favor of an employee with less seniority who was neither African-American nor pregnant.  Compl. ¶ 30; Henny v. New York State, 842 F. Supp. 2d 530, 553-54 (S.D.N.Y. 2012) (finding denial of a favorable shift sufficient to establish this element and collecting cases); Briggs v. Women in Need, Inc., 819 F. Supp. 2d 119, 128-29 (E.D.N.Y. 2011) (finding inference of gender discrimination adequately pleaded where plaintiff identified, inter alia, denial of a desired shift).

And when Jackson elevated her concerns regarding these events to her union representative, Battaglia chose to discipline her and, a few weeks later, notify her that she would be terminated.  Compl. ¶¶ 29, 31-33.  In fact, plaintiff alleges that approximately four other similarly situated African-American employees were terminated prior to the expiration of their respective probationary terms of employment.  Id. ¶ 55.  Given that plaintiff's allegations involve complaints made to Battaglia to which she allegedly received no response beyond discipline, plaintiff's allegations are sufficient to state a plausible claim that Battaglia was

personally involved in the unlawful conduct as well. See Ingenito v. Riri USA, Inc., No. 11-CV-2569 MKB, 2013 WL 752201, at *14 (E.D.N.Y. Feb. 27, 2013) (finding individual defendant could be liable under NYSHRL where a viable discrimination claim remained against primary actor); Gad-Tadros v. Bessemer Venture Partners, 326 F. Supp. 2d 417, 425 (E.D.N.Y. 2004) (noting that a supervisor's failure to remedy or prevent alleged discrimination sufficiently establishes the "affirmative link" required to plead a discrimination claim under § 1981); see also Hooda v. Brookhaven Nat'l Lab., 659 F. Supp. 2d 382, 391 (E.D.N.Y. 2009) ("The burden for pleading individual liability under § 1981 is not high.").

Accordingly, defendants' motion for a partial judgment on the pleadings with respect to plaintiff's gender and race discrimination claims against SUNY Upstate (First and Third Causes of Action) as well as plaintiff's NYSHRL and § 1981 discrimination claims against Battaglia (Fourth and Twelfth Causes of Action) will be denied.[4]

### 2. 42 U.S.C. § 1983

Defendants also move for dismissal of Jackson's § 1983 claim (Eleventh Cause of Action) against Battaglia. This claim conclusorily alleges that "defendants," acting under color of state law, "terminated [p]laintiff's employment as part of its policy of terminating African-American employees prior to their one-year probationary period." Compl. ¶ 105.

---

[4] Jackson's operative complaint frustrates meaningful legal analysis by conflating two, distinct theories of Title VII liability—a claim for a hostile work environment with a claim for wrongful termination—in her First Cause of Action. Compl. ¶¶ 36-45. To the extent that plaintiff has not abandoned her hostile work environment claim by failing to argue in support of it in her opposition memorandum, it is insufficiently pleaded and must be dismissed. Dollman v. Mast Indus., Inc., 731 F. Supp. 2d 328, 337 (S.D.N.Y. 2010) (dismissing pregnancy-based hostile work environment claim where a few isolated occurrences lacked the "quantity and quality" of abuse required for a workplace to be deemed "objectively" hostile); cf. Dowrich-Weeks v. Cooper Square Realty, Inc., 535 F. App'x 9, 13 (2d Cir. 2013) (summary order) (noting allegations of a few incidents of hostility do not rise to the "level of frequency or severity necessary to establish a hostile work environment claim").

As noted above, SUNY Upstate, the "it" presumably being referenced, is immune from such a claim. However, Battaglia is potentially individually liable if Jackson's § 1983 claim is "based on substantive rights distinct from Title VII." Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 143 (2d Cir.1993), cert. denied, 510 U.S. 1164 (1994)). However, plaintiff makes no effort to actually identify any rights that such a claim could vindicate, let alone a constitutional right distinct from the protections against unlawful termination already addressed by Title VII. See Allessi, 16 F. Supp. 3d at 229 (dismissing for this reason and collecting cases). Indeed, plaintiff appears to be attempting to press a Monell claim against SUNY Upstate, which is barred by the Eleventh Amendment. Atkinson v. N.Y.S. Olympic Reg'l Dev. Auth., 822 F. Supp. 2d 182, 191 (N.D.N.Y. 2011) (Sharpe, J.) (noting that Monell does not reach state entities). Accordingly, plaintiff's Eleventh Cause of Action will also be dismissed against Battaglia.

### 3. Disability Discrimination

Finally, defendants move to dismiss Jackson's NYSHRL disability discrimination claim (Eighth Cause of Action) against Battaglia.

The NYSHRL makes it unlawful for an employer to discharge an individual or otherwise discriminate against them in the terms, conditions, or privileges of employment because of their disability. N.Y. EXEC. LAW § 296(1)(a). A so-called "failure to accommodate" claim requires a plaintiff to show that: (1) she was disabled within the meaning of the statute; (2) the employer had notice of her disability; (3) she was able to perform the essential functions of her job with a reasonable accommodation; and (4) the employer refused to make such an accommodation. Miloscia v. B.R. Guest Holdings LLC,

928 N.Y.S. 2d 905, 913-14 (Sup. Ct., N.Y. Cnty. 2011) (citing Vinokur v. Sovereign Bank, 701 F. Supp. 2d 276, 293 (E.D.N.Y. 2010)).

Here, Jackson has plausibly alleged a NYSHRL claim for failure to accommodate against Battaglia. First, plaintiff's allegations of pregnancy-related complications suffice to establish that she was "disabled" within the meaning of the NYSHRL. Specifically, plaintiff alleges she suffered complications during her pregnancy that rendered her susceptible to pre-term labor, an allegation that is generally sufficient to warrant denial of a motion to dismiss. Compl. ¶¶17-19; Bateman v. Project Hospitality, Inc., No. 07-CV-2085 RRM/RML, 2009 WL 3232856, at *10 (E.D.N.Y. Sept. 30, 2009) (observing that complications arising from pregnancy may satisfy ADA's definition of "disability" and noting that the NYSHRL's definition of disability is considerably broader); LaCoparra v. Permagent Home Ctrs., Inc., 982 F. Supp. 213, 228 n.16 (S.D.N.Y. 1997) (collecting cases), disapproved on other grounds by Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706, 724 (2d Cir. 2001).

Jackson further supports this element by alleging that her doctor recommended she go on light duty leave for two weeks to help ameliorate these complications, "as evidenced by her doctor's note." Compl. ¶ 19. Defendants seize on this language in their reply memorandum to contend that this is insufficient to establish pregnancy-related complications and supply a note from plaintiff's physician indicating she was cleared to return to work with no limitations on May 1, 2012. Mulvey Affirmation, Ex. A, ECF No. 42-2. Although a court may consider an extraneous document "where the complaint relies heavily upon its terms and effect," rendering it "integral" to the complaint, the invitation to do so here is declined. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (citation and internal quotation marks omitted). In any event, the mere existence of such a physician's note does

not undermine plaintiff's claim because she alleges that she requested such a note following pressure to return to work from Battaglia and others. See Compl. ¶ 22.

Second, Jackson alleges that she disclosed her pregnancy, and its attendant complications, directly to Battaglia, her direct supervisor, who exercised authority over the terms and conditions of plaintiff's employment. Compl. ¶ 7. Plaintiff further alleges that Battaglia was aware of the ongoing situation at work and refused to address or consider her requests for a light duty assignment or other accommodation. Id. ¶¶ 14, 19. In fact, plaintiff alleges that Battaglia completely failed to do anything other than discipline her and eventually terminate her employment. Id. ¶¶ 19-20, 29, 31-33.

Third, Jackson's complaint, broadly construed, sufficiently alleges that she would have been capable of performing her job with a reasonable accommodation, such as intermittent assistance from co-workers with "changing" at least some patients. Compl. ¶¶ 15, 24; Shaywitz v. Am. Bd. of Psychiatry & Neurology, 675 F. Supp. 2d 376, 390 (S.D.N.Y. 2009) (noting that a plaintiff must "plead the existence of a plausible accommodation").

Fourth, Jackson alleges that her "supervisors" informed her that SUNY Upstate does not accommodate pregnant women or light duty arrangements—whether such a stance is legally permissible or not, it is an unequivocal allegation that her employer and her supervisors refused to accommodate her. Id. ¶ 21.

At this stage, these allegations suffice to establish a plausible claim of failure to accommodate arising from Jackson's pregnancy-related complications. Accordingly, defendants' motion for judgment on the pleadings with respect to plaintiff's Eighth Cause of Action against Battaglia will be denied.

## IV. **CONCLUSION**

Jackson's Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Causes of Action against SUNY Upstate are dismissed. Likewise, plaintiff's First, Second, Third, Fifth, Seventh, Ninth, and Eleventh Causes of Action against Battaglia are dismissed.

However, Jackson's Title VII claims for gender and race discrimination (First and Third Causes of Action) as well as for retaliation (Second and Fifth Causes of Action) may proceed against SUNY Upstate. Likewise, plaintiff's NYSHRL claims for race and disability discrimination (Fourth and Eighth Causes of Action) and retaliation (Sixth and Tenth Causes of Action), as well as her § 1981 discrimination claim (Twelfth Cause of Action) may proceed against Battaglia.

Finally, Jackson makes an unelaborated request for leave to file yet another amended complaint in this action. Since plaintiff has failed to attach a proposed amended pleading as required by this District's local rules, this request is denied.

Therefore, it is

ORDERED that

1. Defendants' motion for judgment on the pleadings is GRANTED in part and DENIED in part;

2. Jackson's Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Causes of Action against SUNY Upstate are DISMISSED;

3. Jackson's First, Second, Third, Fifth, Seventh, Ninth, and Eleventh Causes of Action against Battaglia are DISMISSED;

4. Jackson's Title VII claims for race and gender discrimination (First and Third Causes of Action) as well as for retaliation (Second and Fifth Causes of Action) remain against SUNY Upstate;

5. Jackson's NYSHRL claims for race and disability discrimination (Fourth and Eighth Causes of Action), NYSHRL claims for retaliation (Sixth and Tenth Causes of Action), and her § 1981 discrimination claim (Twelfth Cause of Action) remain against Battaglia; and

6. Jackson's cross-motion for leave to file a Third Amended Complaint is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: December 3, 2014.
      Utica, New York.